IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BIRMINGHAM-JEFFERSON COUNTY )
TRANSIT AUTHORITY AND )
AMALGAMATED TRANSIT UNION )
LOCAL 725 EMPLOYEES' CONTRI- ) NO. 3:09-0304
UTORY RETIREMENT PLAN, et al. ) JUDGE CAMPBELL
)
v. )
)
DAVID J. BOATWRIGHT )

MEMORANDUM

Pending before the Court are Defendant's Motion for Summary Judgment (Docket No. 138) and Plaintiffs' Motion for Summary Judgment (Docket No. 148). For the reasons stated herein, both Motions are DENIED.

FACTS

Plaintiff Birmingham-Jefferson County Transit Authority and Amalgamated Transit Union Local 725 Employees' Contributory Retirement Plan ("the Plan") is a governmental retirement plan established for the benefit of employees of the Birmingham-Jefferson County Transit Authority. The individual Plaintiffs are members of the Plan's Retirement Allowance Committee ("RAC"), formed and authorized to administer the Plan.

Plaintiffs' Complaint alleges that, beginning in 1999, Plaintiffs contracted with Defendant Boatwright to provide actuarial services for the Plan. Plaintiffs contend that, under the terms of the Plan, they were obligated to employ an "enrolled actuary" to provide services to the Plan and that Defendant represented he was qualified as an enrolled actuary. Plaintiffs allege that, in late 2008,

1

they discovered that Defendant was not qualified as an enrolled actuary and, thus, Defendant breached his contract with Plaintiffs. Plaintiffs' Complaint also asserts that Defendant submitted invoices which were excessive, both as to hours worked and fees charged. Finally, Plaintiffs contend that Defendant has refused a reasonable request to return certain data and documentation furnished to Defendant by Plaintiffs in connection with the performance of his services.

Defendant's Answer asserts that the Plan included no requirement for an "enrolled actuary," that Defendant never represented that he was an enrolled actuary, that he notified Plaintiffs of his rate increase, and that he never billed for excessive hours. Defendant also filed a Counterclaim, alleging, among other things,[1] that Plaintiffs breached their contract with Defendant by failing to pay him fees which were owed and Plaintiffs were unjustly enriched thereby.

Since the filing of the Complaint, Plaintiffs have voluntarily dismissed their claims for excessive billing and any claims arising before July 2005. *See* Docket Nos. 159 and 179. Thus, the remaining claims are Plaintiffs' claims for breach of contract (1) for misrepresenting his status as an enrolled actuary (for the time period of June 6, 2005 until August 1, 2008); (2) for submitting two invoices at the rate of $175 per hour when the contract provided for a $150 per hour rate; and (3) for wrongfully refusing to return certain documents and data to Plaintiffs. Also remaining is Defendant's counterclaim for quantum meruit.

The Plan at issue herein includes the following provision: "Actuary" means the individual actuary or firm of actuaries (who is or shall include at least one "Enrolled Actuary" as defined in

---

[1] Upon Motion of the Plaintiffs, the Court dismissed all Defendant's counterclaims except his claim for quantum meruit recovery. *See* Docket No. 24.

2

ERISA § 103(a)(4)(C)) selected by the Trustees to provide actuarial services in connection with the administration of the Plan. Docket No. 146-1, p. 3.

The letter agreement between the Plan and Defendant, dated June 6, 2005, states: "The actuarial services shall conform to the terms of the referenced 'Plan' . . . including Section 2.3, Actuary." Docket No. 146-1, p. 42. [2] Defendant signed the letter agreement.

Defendant represented to Plaintiffs, on his resume submitted to Plaintiffs on October 30, 2008, that he was an Enrolled Actuary. Docket No. 146-1, p. 48.

## SUMMARY JUDGMENT

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). In order to defeat a summary judgment motion, the nonmoving party must provide more than a scintilla of evidence; that is, the nonmoving party must present evidence sufficient to permit a reasonable jury to find in its favor. *Van Gorder*, 509 F.3d at 268. Entry of summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's cases, and on which that party will bear the burden of proof at trial. *Id*.

---

[2] Defendant argues that the Letter Agreement also states that it is a "renewal and continuation of the prior services of David J. Boatwright,"which is true (Docket No. 146-1), but the Agreement includes the specific requirement that it conform to the Plan terms.

3

BREACH OF CONTRACT

The essential elements of a breach of contract claim are (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract. *C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007); *Life Care Centers of America, Inc. v. Charles Town Associates Ltd. Parnership*, 79 F.3d 496, 514 (6th Cir. 1996).

Although Defendant alleges that the Plan documents are of "dubious authenticity," (Docket No. 139, p. 12), the parties do not dispute that there was an agreement between them for actuarial services. Plaintiffs contend that Defendant breached the contract first by representing that he was an enrolled actuary when he was not.[3] Plaintiffs claim that they are, therefore, entitled to recover all monies they paid to Defendant under these false pretenses.

Defendant argues that Plaintiffs were not required to hire an enrolled actuary because the Plan is not an ERISA plan. The documents tell a different story, however. As noted above, the letter agreement between the Plan and Defendant requires that all actuarial services shall conform to the terms of the referenced 'Plan' . . . including Section 2.3, Actuary. The terms of the Plan, specifically Section 2.3, state that the actuary selected by the Trustees for the Plan shall include at least one enrolled actuary. Whether the Plan is an ERISA plan and whether the Plan was required by law to have an enrolled actuary are not controlling here. The Plan documents themselves require an enrolled actuary.

---

[3] Apparently Defendant was an enrolled actuary and lost that designation.

Defendant also contends that he never represented himself to be an enrolled actuary. Defendant's resume, however, submitted to Plaintiffs on October 30, 2008, states that Defendant is an enrolled actuary. Defendant has not shown that he made representations otherwise.

There are disputes, however, as to whether Plaintiffs were actually damaged by Defendant's actions. Damages are an element of a breach of contract claim, and the Court cannot find, as a matter of law, that Plaintiffs were damaged by Defendant's actions. That issue will have to be for trial. Therefore, the Court cannot grant summary judgment on this portion of the breach of contract claim.

Secondly, Plaintiffs argue that Defendant breached the contract by submitting invoices at a rate higher than the agreed-upon $150 per hour. Defendant claims he notified Plaintiffs of the increase in his hourly rate. The Court cannot determine this issue of fact on summary judgment, and therefore, the Motions for Summary Judgment on this claim are denied.

Finally, Plaintiffs contend that Defendant breached the contract by refusing to return to Plaintiffs certain data and documentation. Defendant argues that he has returned this information to Plaintiffs on a compact disc produced in discovery in October of 2009 and again in February of 2010. Plaintiffs have admitted that this issue involves questions of fact which must be determined at trial. The Court finds that there are questions of fact as to what information Defendant is obligated to return to Plaintiffs and whether he, in fact, has returned that information.

To the extent either Plaintiffs or Defendant seeks summary judgment on the counterclaim for quantum meruit, the Court find that there are issues of material fact which preclude summary judgment on this claim.

5

## CONCLUSION

For all these reasons, Defendant's Motion for Summary Judgment (Docket No. 138) and Plaintiffs' Motion for Summary Judgment (Docket No. 148) are DENIED. This action remains set for a bench trial on July 27, 2010.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE